MOLLIE GIBSON CONSOLIDATED MIN. & MILL. CO. v. THATCHER et al.

(Circuit Court of Appeals, Eighth Circuit. September 18, 1893.)

No. 266.

**1. Mines and Mining—Conveyances—Contracts for Royalties.**
After 1.67 acres of the territory within the exterior lines of location of the Silver King lode mining claim had been awarded to the Sauquoit claim by a judgment of the state court, the owners of the Sauquoit claim purchased the Silver King claim, and in the contract to purchase, the deed, and an agreement to pay royalty for ores extracted, the parties described the Silver King claim as survey No. 4,746, and referred to the exterior lines of the location, and to such lines extended vertically downward, as being the subject-matter of the contract. *Held,* that the deed and contracts included the 1.67 acres as part of the Silver King lode mining claim.

**2. Written Instruments—Parol Evidence to Vary—Conflicting Testimony.**
Where parol testimony, if competent to vary the legal effect or construction of a deed and written contracts, is conflicting, an evenly-balanced cause must be determined from inspection and construction of the instruments.

Appeal from the Circuit Court of the United States for the District of Colorado.

In Equity. Suit by M. E. Thatcher and others against the Mollie Gibson Consolidated Mining & Milling Company for an accounting for ores mined pursuant to certain contracts. Decree for plaintiffs. Defendant appeals. Affirmed.

Statement by CALDWELL, Circuit Judge:

This was a bill filed by M. E. Thatcher, G. W. Thatcher, George L. Brown, and A. V. Hunter, plaintiffs, against the Mollie Gibson Consolidated Mining & Milling Company, defendant, to compel the defendant to account for the royalty alleged to be due the plaintiffs for ores extracted from the Silver King lode mining claim under the contracts and deed set forth below, and to permit plaintiffs to inspect the workings and ore in said mine.

Agreement of the 25th of March, 1891: "This agreement, made this 25th day of March, A. D. 1891, between the Mollie Gibson Consolidated Mining and Milling Company, a corporation existing under the laws of the state of Iowa, of the first part, and M. E. Thatcher, G. W. Thatcher, and G. L. Brown, of the city of Aspen, county of Pitkin, state of Colorado, and A. V. Hunter, of Leadville, Lake county, said state, parties of the second part, witnesseth, that the said parties of the second part have bargained and sold to the said party of the first part, in consideration of the following payments and covenants hereinafter mentioned, all that certain mining claim situated in Roaring Fork mining district, Pitkin county, Colorado, known as the 'Silver King,' (and lying near and to the west of the Mollie Gibson lode,) free and clear of all incumbrances and liabilities whatsoever; and said second parties hereto agree, upon fulfillment of the covenants herein to be kept and performed by said first parties, to convey by good and sufficient mining deeds, or cause to be conveyed, the said Silver King lode, as above. And the party of the first part hereby promises and agrees to pay to said parties of the second part for said Silver King lode the sum of one hundred and fifty thousand dollars, ($150,000,) to be paid as follows, to wit: Twenty-five thousand dollars on the placing of a good and sufficient mining deed for said above-described lode in escrow in the Denver National Bank, conveying said lode to said party of the first part, to be delivered to said party of the first part on the further payments of ($25,000) twenty-five thousand dollars on each thirty days thereafter till all is paid. And the said parties of the first part hereby further agree to pay to said second parties, their heirs and assigns, a royalty of 15 per cent. on the net smelter returns received from all ore marketed in and under the said Silver King lode, and its side and end

lines vertically extended downward; and it is hereby agreed that said royalty shall be reserved to said parties of the second part in their deed of conveyance above described."

Deed executed in pursuance of foregoing agreement: "This indenture, made the 26th day of March, in the year of our Lord one thousand eight hundred and ninety-one, between M. E. Thatcher, G. W. Thatcher, and George L. Brown, of the county of Pitkin and state of Colorado, and A. V. Hunter, of the county of Lake and state of Colorado, parties of the first part, and the Mollie Gibson Consolidated Mining and Milling Company, a corporation created and existing under the laws of the state of Iowa, and doing business in the county of Pitkin and state of Colorado, party of the second part, witnesseth, that the said parties of the first part, for and in consideration of the sum of one hundred and fifty thousand dollars, ($150,000,) lawful money of the United States of America, to them in hand paid by the said party of the second part, the receipt whereof is hereby acknowledged, have granted, bargained, sold, conveyed, remised, released, and forever quitclaimed, and by these presents do grant, bargain, sell, convey, remise, release and forever quitclaim, unto the said party of the second part, and to its successors and assigns, the Silver King lode mining claim, lying near and to the west of the Mollie Gibson lode mining claim, and being United States survey No. 4,746, the original location certificate of which is duly recorded in Book Z, page 160, and the amended location certificate of which is recorded in Book 21, page 75, of the official records of Pitkin County, Colorado, situate in the Roaring Fork mining district, in the county of Pitkin and state of Colorado, subject to the payment of the royalty or rent as hereinafter stipulated, together with all the dips, spurs, and angles, and also all the metals, ores, gold and silver bearing quartz, rock, and earth therein, and all the rights, privileges, and franchises thereto incident, attendant, and appurtenant, or therewith usually had and enjoyed, and also, all and singular, the tenements, hereditaments, and appurtenances thereto belonging or in any wise appertaining, and the rents, issues, and profits thereof, and also all the estate, right, title, and interest, property, possession, claim, and demand whatsoever, as well in law as in equity, of the said parties of the first part, of, in, or to the said premises, and every part and parcel thereof, with the appurtenances; to have and to hold, all and singular, the said premises, together with the appurtenances and privileges thereto incident, unto the said party of the second part, its successors and assigns forever, subject, however, to the payment by the said party of the second part to the said parties of the first, their heirs and assigns, of fifteen per cent. (15 per cent.) of the net smelter returns, after deducting transportation, sampling, and smelting charges, extracted and marketed from said lode mining claim,—that is, from within the boundaries of vertical planes extended downward through the side and end lines of said lode mining claim;.and the said party of the second part, for itself, its successors and assigns, hereby covenants, promises, and agrees to and with the said parties of the first part, their heirs and assigns, to pay to the said parties of the first part, their heirs and assigns, fifteen per cent. (15 per cent.) of the net smelter returns, after deducting transportation, sampling, and smelting charges, of all ores that may be hereafter extracted and marketed from said lode mining claim, said royalty or rent to be left with the purchaser of the ore, subject to the order of the parties of the first part, their heirs and assigns. And the said parties of the first part respectively covenant and agree with said party of the second part that they have good title and right to convey their respective interests in said Silver King lode mining claim, and respectively covenant and agree, each for him or herself, that the respective interest by him or her sold and hereby conveyed is free, and discharged of all liens, taxes, and incumbrances whatsoever."

Contract of even date with deed: "Memorandum of agreement, made this 27th day of March, A. D. 1891, between the Mollie Gibson Consolidated Mining and Milling Company, a corporation, party of the first part, and M. E. Thatcher, G. W. Thatcher, George L. Brown, and A. V. Hunter, parties of the second part, witnesseth that whereas, on the 25th day of March, A. D. 1891, the parties of the second part executed a certain agreement for the sale of the Silver King lode mining claim, situated in the Roaring Fork min-

ing district, in the county of Pitkin and state of Colorado, to the party of the first part; and whereas, by said agreement, it is stipulated that the said parties of the second part are to receive fifteen per cent. of the net smelter returns of all ores that may thereafter be marketed from said premises, as a part consideration of said sale; and whereas, the deed to said premises, in accordance with said agreement of sale, is to be executed with this agreement, but it is considered inexpedient to include all the agreements concerning said royalty in said deed, but in lieu thereof this agreement is to be considered in connection with said deed, and as a part thereof: Now, therefore, for the purpose of making the agreements concerning said royalty and the manner of working and managing said premises more definite, it is mutually agreed between the parties hereto: First. That the parties of the second part shall, from the date hereof, henceforth receive 15 per cent. of the net smelter returns (after deducting transportation, sampling, and smelting charges) of all ores that may be marketed from said Silver King lode mining claim, which said sum shall be received by said second parties free and clear of all claims, liens, taxes, or incumbrances of any kind and every kind and nature whatsoever. Second. That the said parties of the second part shall have the right of access to all parts of the Silver King mine, at all reasonable times, for the purpose of inspection; and the said parties of the second part shall have the right to appoint an agent to inspect the mining of ore in said mine, oversee shipments of ore, and inspect or be present at the sampling of the same. Third. The said party of the first part agrees that it will not cause to be instituted any legal proceedings, of any nature or description whatsoever, affecting the title of the parties of the second part, or their grantees, to any of the mineral that may be contained within the exterior boundary lines of said claim, extended downwards indefinitely, and that the royalty to be paid to said parties of the second part shall be free and clear of expense of all suits or proceedings brought against the Silver King claim or the ores contained therein, which shall be finally determined in favor of the parties hereto, or either of them. Fourth. The said party of the first part further agrees that it will proceed forthwith, and diligently continue, to develop the ore in said Silver King lode mining claim, by pushing the existing incline or other workings on its property towards and into the said Silver King lode mining claim, or by sinking the present or a new shaft on said claim. Fifth. That said parties of the second part shall have the right, at any reasonable time, at their own expense, to cause a survey of the underground workings of said Silver King lode mining claim to be made by a reputable surveyor, to be named by them. Sixth. And the said parties mutually agree that this agreement, and the deed herein referred to, shall only apply to and affect the said Silver King lode mining claim and the ores contained therein and belonging thereto."

The defendant answered, setting up, among other things, that 1.67 acres claimed by the plaintiffs to constitute a part of the Silver King lode mining claim was in fact no part thereof, and was not included in the contracts and the deed above set out. There was a decree below for the plaintiffs, and the defendant brought the case here by appeal.

The following is the opinion of Judge HALLETT, who tried the case in the circuit court:

"HALLETT, J. March 26, 1891, M. E. Thatcher, G. W. Thatcher, George L. Brown, and A. V. Hunter conveyed to the Mollie Gibson Consolidated Mining and Milling Company 'the Silver King lode mining claim, lying near and to the west of the Mollie Gibson lode mining claim, and being United States survey number 4,746, the original location certificate of which is duly recorded in book Z, page 160, and the amended location certificate of which is recorded in book 21, at page 75, of the official record of Pitkin county, Colorado.' The deed contained a provision in the habendum clause for payment by the grantee to the grantors, their heirs and assigns, 'of fifteen per cent. (15 per cent.) of the net smelter returns, after deducting transportation, sampling, and smelting charges, extracted and marketed from said lode mining claim,—that is, from within the boundaries of vertical planes extended downwards through the side and end lines of said lode mining claim; and the said party of the second part, for itself, its successors and assigns,

hereby covenants, promises, and agrees to and with the said parties of the first part, their heirs and assigns, to pay to said parties of the first part, their heirs and assigns, fifteen per cent. (15 per cent.) of the net smelter returns, after deducting transportation, sampling, and smelting charges, of all ores that may be hereafter extracted and marketed from said lode mining claim, said royalty or rent to be left with the purchaser of the ore, subject to the order of the parties of the first part, their heirs and assigns.'

"Contemporaneously with this deed an agreement was made in which the parties recite the making of the deed, and state that they make the agreement because it is considered inexpedient to include all the agreements concerning said royalty in said deed; but in lieu thereof this agreement is to be considered in connection with said deed, and as a part thereof.' They then declare that fifteen per cent. of the net smelter returns of all ores that may be marketed from said Silver King lode mining claim shall be paid by the grantees to the grantors, and 'that said parties of the second part,' who are the grantors in the deed, 'shall have the right of access to all parts of the Silver King mine at all reasonable times for the purpose of inspection, and said parties of the second part shall have the right to appoint an agent to inspect the mining of ore in said mine, oversee shipments of ore, and inspect or be present at the sampling of the same.'

"The bill alleges that complainants have been excluded from part of the ground within the Silver King location, an area of 1.67 acres; that they have not been allowed to inspect that territory according to the terms of the agreement; that ore has been taken from it for which the defendant refuses to account; and complainants demand an accounting as to the ore taken from the premises, and also that they have access to all parts of said Silver King lode mining claim, including said 1.67 acres, by means of the usual openings, shafts, drifts, levels, and inclines through which the workings therein are reached, without hindrance from the defendant, whenever request for that purpose is made by your orators, according to the terms of the contract aforesaid,' and that defendant be 'enjoined from in any manner interfering with your orators or their agents in the exercise or enjoyment of any of their rights aforesaid, or from disputing the title of your orators to the whole of the said Silver King lode mining claim, including the 1.67 acres aforesaid.'

"When the deed was made, there was a dispute between the parties concerning the ownership of the 1.67 acres mentioned in the bill which arose in the year 1885. The Silver King lode was located in 1880 or 1881. Two dates are given, but both of them are earlier than the Sauquoit location, under which respondent claims, and it is not material to consider whether the one or the other be correct. The Sauquoit claim is the one under which respondent claims title to the 1.67 acres, and it was located in 1885. Soon after the location of that claim, application was made in the land office for patent. Adverse was made by the Silver King owners to this application, and suit was brought in the district court of Pitkin county in support of the adverse.

"In July, 1886, something like a year after the suit was instituted, judgment was entered in that action upon stipulation of counsel, by which the territory in conflict between the two locations was divided, and the Silver King was awarded 2.46 acres, and the Sauquoit 1.67 acres. Nothing was done upon this judgment towards obtaining a patent for the Sauquoit claim for the 1.67 acres that were awarded to it; but in the following year (1887) the Silver King made application, independently of the other, for its own location, and an entry was allowed upon that of the entire claim, including the 1.67 acres which had been awarded to the Sauquoit by the judgment of the district court of Pitkin county in July, 1886.

"Following this entry there were extended proceedings in the land department,—an application to the commissioner of the land office to set aside the entry, which was done by the commissioner on the 21st of February, 1891. An appeal was taken from his decision, and this was affirmed by the secretary of the interior in March of the same year,—the 29th of March, I think; so that the situation of the property in respect to the 1.67 acres of land on the 26th or 27th day of March, 1891, when the deed and agreement to which refer-

ence has been made were executed, was that there was an entry of the entire claim by the Silver King which had been set aside by the commissioner in so far as it affected the 1.67 acres in dispute between that location and the Sauquoit, and the case was pending on appeal to the secretary of the interior. His decision was made four or five days later.

"It may also be well to say that complainants in the bill, the grantors in the deed, were then in possession of the ground in dispute. There is some conflict of testimony upon this point; but, taking it altogether, it seems to establish that complainants had a shafthouse upon the premises, and some machinery there at that time. Of this controversy and its merits it is not necessary to say anything in determining this case, except that the controversy existed between the parties: that it was a pending controversy, and apparently one in which there was some degree of acrimony between the parties. On the 25th day of March, when negotiations began which resulted in making the deed dated March 26th, which was not, in fact, signed until the 27th day of that month, the witnesses for complainants (and they are very largely the complainants themselves) state that when the negotiations began for the purchase of the property by the Mollie Gibson Company, and during the progress of the negotiations, they had distinctly in mind the controversy which existed in respect to the 1.67 acres, and that it was mentioned. It was understood by them, in the progress of the negotiations, or, in any event, before they were closed, that this territory was within the terms of the deed and the agreement executed between the parties. The witnesses for respondent say that no mention whatever was made of the controversy. They go further than that, and say that they had the matter distinctly in mind, as the complainants had it in mind, and intended to exclude it from the agreement, if any mention should be made of it. * * * [Here the learned judge copies from the testimony in the record.]

"In the view I take of the case, it is not necessary to go further than to say that this dispute existed between the parties, and that both parties had it in mind; that is, the subject whether this ground was embraced in the deed and in the agreement was in their minds. It may be well to say further that, before the deed and agreement were executed in Colorado Springs, the terms of the instruments were under discussion between counsel—Mr. Cavendar, I think, for the complainants, and Mr. Edsall for respondents—for the better part of the day, and that the language of both instruments was carefully considered. On the day preceding the execution of these instruments, negotiations occurred between the parties here in Denver, and upon that occasion an agreement was drawn by Mr. Bolles, who bore some relation to the company, but who, I believe, was not an attorney, which was not materially different from that which was executed on the 27th of March; so that, with this as a basis,—the agreement which had been made between the parties on the 25th day of March, 1891, in Denver.—counsel proceeded to the discussion of the whole matter at Colorado Springs the following day, and the result of their discussion was embodied in the deed and the agreement made on the 27th of March. This makes it clear that the only office of the court in the premises is to interpret the language of the parties in the deed and the agreement of the 26th and 27th of March, 1891; and, looking to them only, it seems to me that there is no room for discussion. The controversy here is whether the complainants have the right to fifteen per cent. royalty on any ore they have taken from the 1.67 acres, and the right to inspect that territory, under the terms of the deed, and the agreement executed between the parties. Now, the deed declares that the payment of royalty shall be from all ore taken 'from within the boundaries of vertical planes extended downward through the side and end lines of said lode mining claim.'

"When we refer to the agreement in the first paragraph, the Silver King lode mining claim is given as the territory from which the royalty shall be paid; but in the third clause there is this language: 'Said party of the first part [that is, the respondent company] agrees that it will not cause to be instituted any legal proceedings of any nature or description whatsoever, affecting the title of the parties of the second part or their grantees, to any of the mineral that may be contained within the exterior boundary lines of said claim, extended downwards indefinitely.' The agreement, which was made

in Denver, and drawn by Mr. Bolles, of the 25th day of March, 1891, contains this language on the same subject: 'And the parties of the first part hereby further agree to pay the said second parties, their heirs and assigns, a royalty of fifteen per cent. on the net smelter returns received from all ore marketed in and under the said Silver King lode, and its side and end lines vertically extended downward.'

"That language is quite as clear as that of the deed and of the agreement. The position of the respondent is that inasmuch as there was a judgment in the district court of Pitkin county, awarding to the Sauquoit claim 1.67 acres of the territory which was within the exterior lines of the Silver King claim, it cannot be said that that territory so awarded to the Sauquoit claim thereafter remained as a part of the Silver King location, and that it should be understood by all parties and by the court, as matter of law, that by the judgment of the district court of Pitkin county the 1.67 acres was excluded from the Silver King territory. But we cannot accept that view of it. The territory which may be granted from a location, or that which may be obtained by a judgment of court, is not in any sense actually excluded from the lines of the location. It may be properly described, still, as within such lines. Parties referred to the Silver King location in all these locations, and in all these papers which they executed in respect to it, as survey No. 4,746, and referred to the exterior lines of the locations constantly, and to those lines extended downward vertically, as being the subject-matter of their contract and agreement. I do not see how we can say that any part of the territory included within those lines shall be regarded as without them. It seems to be plain enough that it was the duty of the parties, if they intended to exclude from those lines the territory included within them, or any part of it, that they should have stated so in their agreement. I am of the opinion that the complainants are entitled to the relief for which they ask."

A. E. Pattison, Thomas H. Edsall, and Henry W. Hobson, (William W. Cooley and Albert E. Pattison, of counsel,) for appellant.

Charles I. Thomson, for appellees.

Before CALDWELL and SANBORN, Circuit Judges, and THAYER, District Judge.

CALDWELL, Circuit Judge, (after stating the facts.) The only question in this case is whether the 1.67 acres of land in controversy was excluded in the conveyance and contracts made by the appellees to and with the appellant. There is a good deal of parol testimony in the record touching this question, but, if such evidence is competent, it is too conflicting, and too nearly balanced, to vary the legal effect and construction of the written contracts and deed. The case must therefore be determined upon an inspection and construction of those instruments. Upon this question we fully concur in the reasoning and conclusion reached by Judge HALLETT in his opinion set out in the statement of the case. The decree of the circuit court is therefore affirmed.